*In the Matter of*
*A.M.C. and I.C., Minor Children*

In the Family Court of the Navajo Nation
Judicial District of Chinle, Arizona

No. CH-FC-1292-03

December 6, 2005

## ORDER

A Petition for Guardianship and a Motion for Immediate Temporary Custody was filed in the above captioned matter on September 19, 2003. An Order for Immediate Temporary Custody was signed on September 19, 2003, giving custody to Petitioners of the two minor children named in this matter. On that same day, the Court ordered that a home study be conducted on the home of Petitioners.

On May 7, 2004, the Court ordered that temporary custody be immediately transferred to Respondent, the father of the minor children. It did so primarily because Petitioners had never informed the Court that the children had been separated for the many months since the filing of their petitions and that they had made no efforts for the children to visit with one another. The Court also ordered an expedited hearing in the matter, because a series of delays in the matter had kept this matter from being resolved in a timely manner. The Court also ordered that a home study of Respondent's home be conducted.

On June 22, 2004, following a hearing on May 24, 2004 at which all parties were present, the Court ordered that Respondent be given temporary custody of the two minor children. The Court also ordered Social Services to monitor the children to see how they were faring in their home and to arrange for visits with their maternal relatives.

On October 18, 2004, Petitioners filed a Motion for Order to Show Cause, asking the Court to hold Respondent in contempt of court for failing to abide by a visitation agreement set between the parties on June 29, 2004, and for cutting off all communications between the minor children and Petitioners in October 2004. A hearing was held on this motion on June 20, 2005. Petitioners were present but respondent was not. Respondent attempted to appear telephonically without seeking court permission in advance. As a result of that hearing, the Court ordered a visitation schedule between the minor children and Petitioners, and ordered Respondent to pay $350.00 in attorney costs.

On May 2, 2005, Petitioners filed a Motion to Compel in order to compel Respondent to answer interrogatories previously propounded and never answered. On May 4, 2005, the Court found Respondent in contempt of court for failure to abide by the visitation agreement, reordered a visitation schedule and sanctioned Respondent $450.00 for attorney fees and costs. On that date, the Court also ordered Respondent to answer the interrogatories propounded by Petitioners and awarded a sanction of $250.00 for attorney fees. On May 14, 2005, the Court amended its order, but including the same orders.

On October 28, 2005, the Court ordered that it would conduct an in camera interview with A.M.C. An in camera interview was conducted with A.M.C. on November 10, 2005. Because he is fourteen years old, he is sufficient age to provide his opinions and input to the Court concerning his circumstances and desires. He indicated to the Court that he wanted to live with Petitioners.

A hearing was held in this matter on October 31, 2005, on a motion by Petitioners seeking custody of the minor children. All parties were present, Respondent-by telephone. After the hearing Petitioners submitted a proposed order with findings of fact and conclusions of law. Respondent did not submit any materials. Based upon the October 31, 2005 hearing, the argument and testimony presented therein, the reports submitted by the Navajo Division of Social Services, a subsequent in camera interview with both children, and all previous documents, arguments and evidence submitted by the parties in this matter, the Court ORDERS that temporary guardianship of both children reside with the Petitioners until an adequate investigation can be made to determine the best home for the children. This decision is based upon the following grounds.

1. First, the Court must deal with the question of jurisdiction. Respondent asserted that the Navajo Nation and the Chinle District Court does not have jurisdiction over him and his children. Respondent has submitted no legal argument on this subject. However, he maintains this Court has no jurisdiction over him because he is not Navajo and he is not Indian, and that he does not reside within the Navajo Nation He asserts that this Court has no jurisdiction over his children, although they are Navajo, because he is their father and because they are not currently residing on the Navajo Nation.

2. There has been no challenge to fact that Respondent is the natural father to the two minor children. Their mother died on September 9, 2003. At the time of her death she was living on the Navajo Nation and Respondent was caring for the children in Phoenix, although their mother had been the primary caregiver of the children and she and Respondent had not been living together for quite some time. The Respondent never had a legal marriage with children's mother. The Respondent provided to the Court an Arizona Child Support Enforcement petition for child support against Respondent, which was dated March 15, 2001. It is safe to assume that the parents of the minor children were separated at least from that date.

3. Respondent brought the children to the Navajo Nation for their mother's funeral soon after her death. A.M.C. visited with Petitioners after the funeral. They did not return him, but instead kept him from Respondent and petitioned this Court for temporary custody of both children. I.C. a continued to live with her father in Phoenix. On May 7, 2004, this Court ordered that A.M.C. be returned to his father. It is not clear where Petitioners were living at the time of their mother's funeral but shortly after that they moved to Avondale, Arizona, approximately an hour from Respondent's residence in Phoenix. Both petitioners are enrolled members of the Navajo Nation T.C. is D.C.'s brother.

4. This Court has subject matter jurisdiction over the issue of legal custody over the minor children because they are Navajo children and this is a matter as to who has proper custody over them. Their mother was a full-blooded Navajo and they are enrolled members of the Navajo Nation Section 253(B) of Title 7 of the Navajo Nation Code states "The Family Courts of the Navajo Nation shall have original exclusive jurisdiction over all cases involving domestic relations, probate, adoption, paternity, custody, child support, guardianship . . . and all matters arising under the Navajo Nation Children's Code." The Navajo Nation Children's Code is contained within Sections 1001 through 1405 in Title 9 of the Navajo Nation Code. Section 1055B(3) of Title 9 of the Navajo Nation Code states that the Family Court will have exclusive original jurisdiction of proceedings to determine custody of or to appoint a custodian or guardian for a child. *See In the Matter of A.A., a Minor Child*, 5 Nav. R. 121, 123 (Nav. Sup Ct. 1987).

5. This Court has personal jurisdiction over the children Section 1055D of Title 9 of the Navajo Nation Code states, "The Family Court may hear child custody matters involving Navajo children wherever they may arise." (Emphasis added.) See *In the Matter of A.D., a Minor Child*, 5 Nav. R. 121, 123-124 (Nav. Sup Ct. 1987).

6. This Court has personal jurisdiction over Respondent because he has voluntarily submitted himself to the jurisdiction of the Court in this matter. "The Family Court shall have jurisdiction over non-Navajo child

custody matters when the parties submit to the jurisdiction of the Court or when the best interests of the child require such an arrangement." 9 N.N.C. 1055(D). In this matter only the Respondent is non-Navajo and the children and Petitioners are Navajo. These circumstances would act in the favor of this law applying in this matter, rather than against it. Since the mother of the children, who was the primary caregiver was a member of the Navajo Nation, died on the Navajo Nation, and since the Navajo Nation has an acute responsibility, expressed many times (*See In the Matter of A.D., a Minor Child*, 5 Nav. R. 121, 123-124 (Nav. Sup Ct. 1987), quoting from the Indian Child Welfare Act concerning federal recognition of this principle.), that its children are its most important resource (*See, e.g., In the Matter of H.M.*, 8 Nav. R. 572, 579 (Nav. Sup Ct. 2004), this Court has a duty to see that the best interests of the children are secured.

7. The respondent has in the past in this matter submitted to the jurisdiction of this Court. At the October 31, 2005, hearing, he stated that he only did this in order to get his children back. However, he continued to enter appearances and submit to the jurisdiction of the Court after he was granted temporary custody. Respondent stated to the Court at the October 31, 2005 hearing that he had attended two previous hearings in this matter. He had in fact many interactions and communications with this Court. On November 10, 2003, he sent a letter to Judge Bedonie asking that a hearing set for December 8, 2003 be quashed because as the surviving natural parent of the two minor children he should assume parental responsibilities and because he is not a member of the Navajo Nation nor do his children reside on the Navajo Nation. On December 1, 2003, respondent wrote a letter to Judge Bedonie requesting that he be allowed to appear telephonically for a hearing scheduled December 8, 2003. (This hearing was not conducted.) On January 14, 2004, Respondent spoke with the staff attorney of this Court concerning court procedures, receiving documents from Petitioners, appearing telephonically and the status of his children. On March 3, 2004, he spoke with the court administrator of this Court concerning whether it had received a request to appear telephonically. On May 6, 2004, Respondent filed a motion with the Court setting forth a number of reasons why this court should deny Petitioners' request for guardianship. On May 21, 2004, he filed a request to appear telephonically for a hearing scheduled on May 24, 2005. He also appeared here in Chinle Court on May 6, 2004, for a hearing that was canceled on that day. He appeared telephonically for a hearing that was held on May 24, 2004. On June 3, 2004, he submitted a Summary of Facts, dated May 25, 2004, with accompanying exhibits to further support his arguments against awarding Petitioners guardianship. On June 29, 2004, Respondent signed a visitation agreement with Petitioners that was filed with this Court on October 18, 2004. On November 1, 2004, Respondent filed a Response, written October 18, 2004, to a Navajo Division of Social Services Report that

was dated September 9, 2004. On January 4, 2005, Respondent filed a Motion to Dismiss concerning a hearing set for January 29, 2005, and requesting the Court to grant him permanent custody. On January 20, 2005, he filed a Notification of Telephonic Appearance. On March 2, 2005, Respondent filed a Motion to Dismiss (2nd Request). On March 4, 2005, he submitted a Motion for Telephonic Appearance. On March 2, 2005, respondent telephonically attended a hearing in this matter. On October 28, 2005, Respondent filed a Motion for telephonic appearance. Respondent telephonically attended a hearing on October 31, 2005. Based upon his long time active participation in the proceedings in this matter, the Court finds that he has voluntarily submitted himself to the jurisdiction of this Court. Therefore, this Court has personal jurisdiction over him.

8. The Court finds that it is in the best interests of the children that they remain together.

9. As stated in its order for Temporary Custody, the Court still maintains that as a father to these minors, Respondent has a superior right to the care and custody of his children. However, that right is not supreme. That right takes second place to the best interests of the children, which is the ultimate standard for this court in matters of custody. That is why the Court awarded only temporary custody to Respondent on June 22, 2004. The mother had been the primary caretaker of the children. Respondent had no legal marriage to their mother, and the Court had no knowledge as to how much Respondent had been in the lives of these children and how well equipped he was able to care for them. The Court did not know then, as it still does not know, the history of Respondent's relationship to his children and how they have bonded with him. The children had recently suffered a traumatic event in their lives with the passage of their mother, and it was uncertain how the children might handle such an event, especially since they had not received counseling. The Court knew nothing concerning Petitioner's living conditions, his employment, his criminal history. It still remains ignorant of these matters today. Thus, the Court was only willing to allow provisional custody by Respondent so that the Court, as *parens patriae*, had an opportunity to be assured that the children were left in safe hands.

10. It must be noted that Navajos do not put the same emphasis on the nuclear family as do the states. While the basic family of unit of mother, father and children are the foundation and center of Navajo life, children are also given a great deal of care and support by an extended network of relatives. Moreover, children understand this relationship of extended relatives, and this early relationship cements their future as adults with having a large network of blood relatives and clan relatives upon whom they can rely. This is something that Navajo children "inherit" as part of being raised in a Navajo tradition of many relatives who may assume the role

of parent. Navajo common law on the family extends beyond the nuclear family to the child's grandparents, uncles, aunts, cousins and the clan relationships. This is inherent in the Navajo doctrine of *ak'éí* (kinship). *Davis v. Means*, 7 Nav. R. 100, 102-103 (Nav. Sup Ct. 1994). Relatives are important to the Navajo child. One noted writer has said of that relationship: 'the importance of his relatives to the Navaho (sic.) can scarce be exaggerated. The worst that one may say of another person is, 'He acts as if he didn't have any relatives.' Conversely, the ideal behavior often enunciated by headmen is, 'Act as if nobody were related to you.' Clyde Kluckhon and Dorothea Leighton, *The Navaho*, 100 (Rev. Ed. 1974). Thus the Navajo child fits into an atmosphere of family and relatives." *Lente v. Notah*, 3 Nav. R. 72, 80-81 (Nav. Ct. App. 1982).

Not only is marriage important in Navajo common law, but relatives and relationships are as well.

Navajos think of such relationships (kinship) in a much broader and different sense than does the general American population. B. Johnson, Ed., *Navajo Stories of the Long Walk Period*, xix (1973) (Preface explaining relationships used in the stories). There is the biological family, with husband, wife and unmarried children; the extended family, which adds married daughters and their husbands as well as unmarried children, the outfit, with mixes of extended or biological families; the clan, with relationships which are not restricted to biological connections; and linked clans, with relationships among clans. *Id.* xix-xxi. *Arizona Public Service Co. v. Office of Navajo Labor Relations*, 6 Nav. R 246, 264 (Nav. Sup Ct. 1990).

11. Navajos expect this extended family network for all their children operating for them as closely as the basic nuclear family, and make little separation between it and the nuclear family. That is why the Court in its Temporary Custody Order stated that it is in the best interests of the children that they maintain relationships with the relatives of their mother, who if they follow traditional Navajo custom, do not consider themselves any less a parent to their nieces and nephews as did their mother. By developing such relationships the children can have the opportunity to establishing close ties to their blood and clan relatives, which can sustain them for their whole lives.

12. On November 10, 2005, both children spoke with this Court. A.M.C. called from his school. He stated that both he and his sister wanted to live with his uncle and aunt. He stated that his call was voluntary and that he had wanted to talk to the Court for a long time. He stated that he had not brought up the subject with his father because his father will get mad and start yelling. I.C. stated that she wanted to live with her aunt. She stated she wanted to live with her aunt because they work every day. She also stated that she and her brother are not allowed to visit with her aunt any more

because they did not call their father one time when they were over there visiting.

13. Navajo Division of Social Services has submitted three reports to this court, all of them recommending that the children be placed with Petitioners. The first report, dated May 21, 2004, stated that Respondent lived in Phoenix, Arizona in a one-bedroom apartment with little furniture due to a recent move; that Petitioners recently moved into a three bedroom residence in Avondale, Arizona; and indicated that A.M.C. wished to live with Petitioners and I.C. wished to live with her father. The second report, dated September 9,2004, stated that both children said they wanted to stay with their uncle and aunt rather than their father; that Respondent was very uncooperative with the social service worker, not letting her enter his residence and insisting that she talk to the children in his presence; that he called the police to report her visit, and that it was not until after the police arrived that she was able to talk with the children for only a brief period; that Respondent refused to state to her anything in regard to his employment; that Petitioners informed her that the children at one of their visits told them that they sometimes do not have enough to eat and that one time they were told by Respondent to eat toothpaste; that the children reported to the Navajo Division of Social Service caseworker that Respondent often leaves them home alone at night while their father goes out with his friends. The third report, dated October 28, 2005 stated that the children have had no contacts with Petitioners or extended maternal relatives for about a year; that Respondent has not cooperated in the visitation agreement of June 29, 2004; and that as of the date of the report he was refusing all contact between the minor children and Petitioners.

14. These reports from the children and from the Division of Social Services are troubling to the Court. Respondent claims the reports are not accurate and that he has done a successful job of taking care of his children. However, he has produced no evidence to support his assertions. He has refused to provide requested information to Petitioners, in spite of this Court ordering him to do so and sanctioning him with fines for his failure to do so. He claims to have received two visits from a child protective services agency in Phoenix: one to inspect his home and one to check on his family following a telephone complaint to them by A. He claims that this Arizona agency (or agencies) has given him positive responses and evaluations, but he has never provided any reports to Petitioners, to this Court, or to the Navajo Division of Social Services. He has never given his permission to the Arizona agency or agencies to consult with Navajo Division of Social Services or communicate their assessments to this Court. He has never provided any information concerning his employment or earnings. He may be a very good father and may be providing an adequate home for his children, but he is requiring this court to accept him only at his word. This Court cannot do that, because it

owes a duty to the children as wards of this Court to make sure they receive proper care and protection.

15. A.M.C. is fourteen years old and in the ninth grade. He is of an age that it is proper for the Court to take his desires into consideration. The Court does not necessarily have to follow his wishes, but it must consider them. Therefore, the Court appoints Emery McCabe of the Chinle DNA office to act as a Guardian Ad Litem for the minor children on a pro bono basis. He is to act as an attorney representing their best interests to this Court. He is to make a report to this Court after he has an opportunity to fully investigate the circumstances of this case. The Court ORDERS the clerk to make copies of the essential records in this matter for his review. Any expenses incurred in his representation are to be reimbursed by Petitioners. The Court ORDERS that Mr. McCabe is to have access to the children when it is mutually convenient in order to interview them and to have access to any confidential records and reports submitted in this matter.

16. The Court is also very concerned with the report, if it is true, that Respondent is living in a one-bedroom residence with a fourteen year old boy and a nine-year old girl, with all three apparently sharing the same bedroom. The Court ORDERS Respondent to provide this Court with whatever copies of reports he has received from any and all Arizona agencies concerning his children. The Court ORDERS Respondent to contact whatever agency or agencies that have contacted him to instruct them that he is giving permission for them to share information they have gathered with this Court and with the Navajo Division of Social Services.

17. Because of Respondent's failure to allow inspection of his home by a Navajo social services agency, because he has not provided any employment and financial information to this Court, because he has steadfastly refused to provide discovery information to Petitioners, which they have a right to request, because he has cut off all contact between his children and their Navajo relatives, not only prohibiting them from visiting them in Avondale, but preventing them from visiting family on the Navajo Nation, because of the recommendations of the Navajo Division of Social Services, and because of the nature of the communications from the minor children in this matter to the Court, this Court ORDERS that temporary custody of the minor children, A. and I.C., be awarded to Petitioners, with ample and free visitation with their father. If the parties cannot work out their own visitation schedule, the Court, upon motion from either party, will order visitation schedules after a hearing. After the Court has been given an opportunity to investigate and consider all the pertinent evidence in this case, it will make a final decision concerning custody.

18. The Court takes judicial notice of the fact that Alfreda Tsosie is an employee of the Navajo Nation and a caseworker with the Navajo Division of

Social Services. The Court knows this not only by her work in this matter, but by the many other cases in which she has participated before this Court. The Court finds that Respondent recognizes her by sight. The Court also takes judicial notice that, contrary to Respondent's assertions, Ms. Tsosie receives no pay for her services other than what she receives from the Navajo Nation for her work as a caseworker for the Navajo Division of Social Services. The Court ORDERS Respondent to cooperate with Ms. Tsosie, to answer all the questions she has of him, allow her access to his home and allow her to speak with his children, outside of his presence, for as long as she requires. Failure to do so will lead to an order to show cause hearing to determine why Respondent should not be held in contempt of court for failure to follow these orders.

19. The Court ORDERS Respondent to immediately supply the Court with recent earnings information so that it may set proper child support payments for his children while they are in the custody of the Petitioners.

To make things clear to the parties, the Court reiterates in summary form its orders:

1. Temporary custody is awarded to Petitioners, with ample and free visitation to Respondent.

2. Emery McCabe is appointed Guardian Ad Litem to represent the best interests of the children.

3. Respondent is to provide to the Court all reports he has received from any and all Arizona agencies that have contacted him in regard to his children since the beginning of this case, and he is to contact them to give permission that they share their information with the Navajo Division of Social Services and this Court.

4. Respondent is to cooperate with Ms Alfreda Tsosie and the Navajo Division of Social Services by answering all her questions, permitting her to inspect his residence and allowing her to privately interview his children for as long as she requires.

5. The Respondent is to immediately provide this Court with current earning information in the form of wage statements or other documents that can provide independent proof of his income.